UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAMES MCKINSTRY,<br><br>Defendant. | CR. 21-50020-JLV<br><br><br><br>ORDER |

**INTRODUCTION**

Defendant James McKinstry filed a motion for compassionate release. (Docket 71). Pursuant to Standing Order 23-02, the Federal Public Defender for the Districts of South Dakota and North Dakota ("FPD") and the United States Attorney for the District of South Dakota filed records, submissions and briefing on Mr. McKinstry's motion. (Dockets 72 & 78). For the reasons stated below, defendant's motion is granted.

**STANDING ORDER 23-02**

Standing Order 23-02, captioned "Revising the Procedure for Compassionate Release Motions Under the First Step Act," "revis[ed] the procedure for submission and consideration of compassionate release motions under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)." See https://www.sdd.us courts.gov/content/standing-order-23-02-revising-procedure-compassionate-release-motions-under-first-step-act ("SO 32-02"). Under the order, the FPD is

automatically "appointed to represent all defendants in criminal cases: (a) who previously were determined to be entitled to appointment of counsel or who are now indigent; and (b) who may be eligible to seek compassionate release under the First Step Act. If the FPD believes itself to have a conflict of interest or other inability to represent a person who qualifies under (a) and (b) above, the FPD shall notify the magistrate judge in the division where the case is pending so that the magistrate judge may consider the appointment of a CJA panel attorney." Id. at ¶ 1.

## FACTUAL BACKGROUND

Mr. McKinstry pled guilty to receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A). (Docket 62). Mr. McKinstry's adjusted advisory guideline range was 78 to 97 months of imprisonment based on a total offense level of 28 and criminal history category of I. (Docket 62-1 at p. 5). The court varied below the guideline range due to the defense motion for variance and lack of government's objection. Id. at p. 3. Mr. McKinstry was sentenced to 60 months imprisonment followed by 5 years of supervised release. (Docket 62).

Mr. McKinstry is an inmate at FCI Seagoville, a low security facility. See Fed. Bureau Prisons, https://www.bop.gov/inmateloc/ (last checked May 15, 2023). Mr. McKinstry's scheduled release date is October 24, 2026. Id.

## ANALYSIS

### A. Legal Standard

Because sentences are final judgments, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). In 2018,

Congress passed the First Step Act ("FSA"), which amended 18 U.S.C. § 3582(c)(1)(A) to permit inmates in specified circumstances to file motions in the court where they were convicted seeking compassionate release.

Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a sentence must comply with the 18 U.S.C. § 3553(a) sentencing factors and "applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The Sentencing Commission's policy statement, which was adopted before the FSA, requires both "extraordinary and compelling reasons" and that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(1) (U.S. Sentencing Comm. 2018). The inmate bears the burden to establish that compassionate release is warranted. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016). The district court is not required to investigate possible avenues for relief or to develop the record in support of a motion. United States v. Banderas, 39 F.4th 1059 (8th Cir. 2022).

Congress did not define what constitutes "extraordinary and compelling." 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to promulgate "the criteria to be applied and a list of specific" extraordinary and compelling examples. Id. Prior to Congress passing the FSA, the Sentencing Commission limited "extraordinary and compelling reasons" to four scenarios which are the consideration of the defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and

3

deteriorating health in combination with the amount of time served and (4) compelling family circumstances.  Id.  There is a fifth catch-all category for an "extraordinary and compelling reason other than, or in combination with, the reasons described" as determined by the Director of the Bureau of Prisons.  U.S.S.G. § 1B1.13 cmt. n.1(D).  These categories have not been updated since December 2018 when FSA became law.[1]

As a result, district courts are left to determine whether the policy statement of the Sentencing Commission that was in existence when the FSA was passed still applies.  See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act").  The purpose of the First Step Act is to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the Bureau of Prisons ("BOP") before the passage of the First Step Act.  It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of [c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure

---

[1] Until recently the United States Sentencing Commission lacked a quorum, and the newly established commission has not amended the United States Sentencing Guidelines.

of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Mr. McKinstry submitted a request for compassionate release to FCI Seagoville's Warden on February 22, 2023.  Since more than 30 days have passed without a response from the warden, Mr. McKinstry exhausted his administrative remedies.

### B. **Defendant's Motion for Compassionate Release**

Mr. McKinstry is "requesting immediate transfer to 'Home Confinement' in citing certain health and age risk factors which meet the Centers for Disease Control and Prevention ["CDC"] guidelines in the wake of COVID-19 and its variants."  (Docket 71 at p. 1).  He also requests release due to the "risks associated with living in a congregate setting with 320 other men in dorm-style living conditions."  Id.

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions.  The CDC identified the following conditions as ones that pose an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, heart conditions, obesity (Body Mass Index ("BMI") of 30 or higher), diabetes, moderate to severe asthma, cystic fibrosis, hypertension or high blood pressure and liver disease.  See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withmedical-conditions.html (last accessed May 5, 2023).

5

Mr. McKinstry's medical records confirm he has sleep apnea, acute sinusitis, atrial fibrillation, hypertension and hyperlipidemia. (Docket 72 at pp. 40 & 50). His presentence report, confirmed with the Rapid City Medical Center, states he suffers from varicose veins, diverticulitis, benign colon polyps, degenerative joint disease, peripheral artery disease, prediabetes and benign nonnodular prostatic hyperplasia without lower urinary tract symptom. He reported no mental health issues. (Docket 59 at ¶¶ 40 & 42). He "takes medication for hypertension, hyperlipidemia, atrial fibrillation" and utilizes a CPAP machine. (Docket 72 at p. 41).

Mr. McKinstry has a history of basal cell carcinomas on his face, a form of skin cancer. (Docket 78 at pp. 149-53 & 198-204). These cancers were removed, without immunocompromising radiation or medications. Id. The CDC notes that individuals with a history of cancer, including Mr. McKinstry, are at an increase risk if they contract COVID-19.

Prior to his incarceration, Mr. McKinstry was diagnosed with coronary artery disease, with an "extensively calcified right common femoral artery approximately 70%" and an abnormal stress test that showed nonocclusive coronary disease. (Docket 78 at pp. 221-24 & 243-47). Mr. McKinstry also has hypertension. (Docket 72 at p. 3). "[H]ypertension is the most frequent comorbidity in patients with COVID-19 and has been identified as a major risk factor for the increased severity and mortality associated with COVID-19." See "Role of Hypertension on the Severity of COVID-19: A Review." Journal of Cardiovascular Pharmacology vol. 78, 5 (2021) https://www.ncbi.nlm.nih.gov

6

/pmc/articles/PMC8562915/#:~:text=Epidemiological%20studies%20have%20found%20that,mortality%20associated%20with%20COVID%2D19. According to the CDC, Mr. McKinstry has a significant risk of severe illness from COVID-19 due to his heart condition.

Mr. McKinstry suffers from obesity. Earlier this year, Mr. McKinstry's Body Mass Indices was 31.9 or 32.7 on February 7 and 32.8 on February 2. (Docket 72, pp. 43-44). With a BMI over 30, Mr. McKinstry is categorized as "obese." According to the CDC, conclusive evidence shows that obesity increases the likelihood of hospitalization or even death if one contracts COVID-19. Mr. McKinstry's obesity contributes to his showing of extraordinary and compelling reasons for release.

The purpose of the First Step Act was to expand the availability of compassionate release based on judicial findings of extraordinary and compelling reasons without being restricted to those categories identified by the Sentencing Commission or the rationale used by the BOP before the passage of the First Step Act. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022) ("the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act"). See also United States v. Marcussen, 15 F.4th 855, 859 (8th Cir. 2021) ("The commentary relevant to determining whether [defendant's] medical conditions are extraordinary and compelling reasons for a sentence reduction, USSG § 1B1.13, comment. (n.1(A)(ii)), is advisory not prohibitive." It is clear Congress wishes to "[i]ncreas[e] the [u]se . . . of

[c]ompassionate [r]elease" by allowing district courts to grant petitions "consistent with applicable policy statements" from the Sentencing Commission.  See 18 U.S.C. § 3582(c)(1)(A)).

According to the CDC, "older adults are at highest risk of getting very sick from COVID-19.  More than 81% of COVID-19 deaths occur in people over age 65.  The number of deaths among people over age 65 is 97 times higher than the number of deaths among people ages 18-29 years."  See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited May 16, 2023).  Mr. McKinstry's age of 75 puts him in the high risk group.

The CDC has identified factors that increase community spread of COVID-19 and individual risk, including crowded situations, enclosed spaces and close or physical contact among people, especially for longer durations.  The court recognizes the efforts BOP has taken to prevent and mitigate outbreaks.  See BOP Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).  This includes the BOP's recent implementation of a COVID-19 vaccination program.  As of April 4, 2023, the BOP has administered 349,408 doses of COVID-19 vaccines systemwide.  https://www.bop.gov/coronavirus/(last visited April 4, 2023).  Nevertheless, despite the efforts to slow the spread of COVID-19 in prisons, the practical reality is many of the factors increasing community spread and individual risk of exposure to the virus are simply unavoidable in prison.

Nor can the court ignore the potential for infection when the risk for Mr. McKinstry is significant.  The new strains and variants of COVID-19 only add to the risk and uncertainty.  At age 75 with major physical ailments, Mr. McKinstry is among the individuals the CDC deems to be at a higher risk of developing serious complications or death if he contracted COVID-19.

Based on a careful review of his medical records, the court finds Mr. McKinstry's major health issues are chronic.  That is, his conditions will only persist and likely worsen over time.  In conjunction with his age and serious health conditions, Mr. McKinstry's incarceration exacerbates the risk of infection.

Mr. McKinstry's conditions significantly diminish his ability to provide self-care within the environment of a correctional facility, putting him at risk of severe illness—and even death—should he contract COVID-19.  The court finds Mr. McKinstry's chronic and severe medical conditions make him especially vulnerable to COVID-19 compared to other individuals incarcerated in FCI Seagoville or other BOP facilities.  Mr. McKinstry's mandatory minimum sentence was not intended to be a death sentence.

The court finds Mr. McKinstry met his burden of proof and presents extraordinary and compelling reasons under § 3582(c)(1)(A)(i).

### C. 3553(a) Factors

The 18 U.S.C. § 3553(a) sentencing factors further show compassionate release is not warranted.  The factors are:

1. the nature and circumstances of the offense and the history and characteristics of the defendant;

    2. the need for the sentence imposed—

        a. to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        b. to afford adequate deterrence to criminal conduct;

        c. to protect the public from further crimes of the defendant and

        d. to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

18 U.S.C. § 3553(a).

At sentencing, the court varied downward, finding "that the Federal Sentencing Guidelines range in this case [was] too severe." (Docket 74 at p. 23). The court considered Mr. McKinstry's age, lack of criminal history, military service, serious health problems and letters of support, indicating he is a "very solid person, solid citizen, great family man [and] community member." Id. at pp. 23-24.

Mr. McKinstry had no prior criminal history. (Docket 59 at ¶¶ 27-30). Prior to his guilty plea, for over a year, Mr. McKinstry was on release, under conditions, with no reported problems. Id. at ¶ 4. Mr. McKinstry has had no disciplinary action while incarcerated. Id.

A psycho-sexual evaluation was conducted for sentencing purposes and identified Mr. McKinstry's "overall . . . risk for a contact sexual offense appears Low." (Docket 60 at p. 5). The evaluation suggested that, given the nature of Mr. McKinstry and the crime he committed, individual treatment, rather than group therapy, was recommended. Id. at p. 6. The court agrees with Mr.

McKinstry: if released from prison, he would receive better treatment, given the greater flexibility in scheduling and broader services available.

Incarceration is not the only "kind[ ] of sentence[ ] available." Id. at § 3553(a)(3). The sentencing statute mandated a mandatory minimum sentence, but this is just one factor for the court to consider. 18 U.S.C. § 3553(a)(4). At this juncture, use of the First Step Act will not create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Id. at § 3553(a)(6).

On careful balance of the § 3553(a) factors, in light of Mr. McKinstry's age, health conditions and limited criminal history, a sentence of time served and a period of home confinement would be sufficient, but not greater than necessary to accomplish the goals of federal sentencing. Id. at § 3553(a). The government's concerns that Mr. McKinstry has not served enough of his sentence in custody will be addressed through conditions of supervised release which will include imposing a lengthy period of home confinement. A noncustodial sentence will limit Mr. McKinstry's liberty interests through supervised release, and he will face harsh consequences for any violation of the conditions imposed.

**D. Conclusion**

Mr. McKinstry met his burden of proof and presented "extraordinary and compelling reasons" warranting a sentence reduction under § 3582(c)(1)(A)(i). Mr. McKinstry's age, serious chronic medical conditions, behavior while on

11

release and in custody, unique life circumstances, and his vulnerability to COVID-19 while in the prison setting justify compassionate release.

The court does not have authority to modify the defendant's sentence to home confinement.  United States v. Amarrah, 458 F. Supp. 3d 611, 620 (E.D. Mich. 2020).  The court does, however, retain the authority to reduce Mr. McKinstry's sentence to time served and impose a condition of home detention as a condition of his supervised release.  Id.

Following his release from custody, Mr. McKinstry will remain on supervised release for five years, subject to the mandatory and standard conditions and the special conditions of supervised release imposed in the original sentence.  (Docket 49 at pp. 3-5).  The court further imposes an additional special condition of supervised release of home confinement for a period of 24 months.  Mr. McKinstry's release plan includes living with his wife Suzanne, in Rapid City, South Dakota, where he can continue receiving medical care and counseling.  (Docket 79 at p. 16).

**ORDER**

Based upon the above analysis it is

ORDERED that defendant's motion for compassionate release (Docket 71) is granted.

IT IS FURTHER ORDERED that the defendant's sentence of imprisonment is reduced to time served.

IT IS FURTHER ORDERED that this order is stayed for two weeks from the date of the order to permit the Bureau of Prisons and Probation Office to assist Mr. McKinstry's transition from custody to release status.

IT IS FURTHER ORDERED that upon his release, Mr. McKinstry shall reside in Rapid City, South Dakota, at a location approved by the United States Probation Office.

IT IS FURTHER ORDERED that within 72 hours of release from the custody of the BOP Mr. McKinstry must report, by telephone, 605-339-5920, to the United States Probation and Pretrial Services Office for the District of South Dakota in the United States Courthouse, 515 Ninth Street, Room 203, Rapid City, South Dakota, 57701.

IT IS FURTHER ORDERED that Mr. McKinstry shall remain on supervised release for five years, subject to the mandatory and standard conditions of supervision and the special conditions of supervision imposed in the sentence of November 18, 2022.  (Docket 62 at p. 5).

IT IS FURTHER ORDERED that court imposes an additional special condition of supervised release of home confinement for a period of 24 months. The defendant shall comply with the terms of the Home Confinement Participant Agreement.  In its discretion, the United States Probation Office may utilize appropriate location monitoring technology to ensure defendant's compliance with home confinement.

IT IS FURTHER ORDERED that the United States Probation Office shall prepare an amended judgment consistent with this order.

IT IS FURTHER ORDERED that the Clerk of Court shall deliver a copy of this order to the United States Probation Office and the United States Marshals Service.

Dated June 20, 2023.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE